May it please the Court, I'm Judith Lott on behalf of the petitioner Rajbir Singh. We have another case here involving a frivolous finding by the immigration judge, quite different, I think, from the cases that have been argued previously. Briefly stating the facts of this case, this petitioner came to the United States in 1992, was apprehended at the airport and put in exclusion proceedings. During the time he was in custody, he retained an attorney, and this is the Pineda case, an attorney and an interpreter prepared an asylum application for him in 1992. That application was adjudicated while he was in custody and denied while he was in custody and he was excluded, he was sent back to India. Subsequently, this petitioner returned to the United States and refiled for political asylum. The second application is in the records beginning at page 332. And if you just take a visual of that application, it is clear that, to me, that this applicant is not only not hiding his previous filing and deportation, but just basically mentioning it at every point in the application that he possibly can. So just a visual of this shows that he's not hiding his previous filing. The main – well, the Board has found, and this is in the record at page 2, that the prior to the April 1, 1997 law, which implemented the frivolous finding. So even if it hadn't been prepared by an attorney that was disbarred, that application is not at issue. So we look at the reasoning that the Court and the Board have used in order to affirm the – or have used in support of a frivolous finding for application No. 2, and that simply just does not meet the burden in any way, shape, or form. The reasoning is basically exclusively comparing application No. 1 with application No. 2. The only substantial reason that the Court cited in its decision for denying – or for finding that application No. 2 was not – was not credible is that the Respondent changed his testimony – I'm reading from page 42 of the record – that the Respondent changed his testimony regarding how he obtained his current passport, and that he gave inconsistent testimony with regard to how a handwritten version of his application was prepared. Neither of those two arguments has anything to do with the heart of the claim. And, moreover, the abuse that this applicant claims to have suffered in India in the second application is egregious and would certainly qualify not only for past persecution, but I would argue also that it would – it would be – there would be a finding that it was so severe that even if country conditions had changed, he shouldn't – So let me ask you this. So is the second application based solely on the events that occurred after he went back to India?  No. No. No.  No. No.   No. No.       No.                        What he says about the prior – what he said in the prior application? I don't believe so. Application number two stands on its own. It shouldn't be compared with application number one. Well, why wouldn't – why shouldn't it be compared at least for credibility purposes? Because the attorney that prepared it was disbarred and that was not addressed. And because he freely admitted – Mr. Singh admitted when he testified to his second application that there were false statements made by the attorney and the attorney's interpreter in his first application. The Court earlier talked about canned applications. I would argue that application number one does look like a canned application. Application number two does not look like a canned application. And it's application number two that was adjudged to be frivolous. What's his real name? His birth name is Harbeet Singh. That was his name in 1992? Yes. And that's still his name? He's changed it whether it was legally or not. He's changed it to Rajbir. What kind of papers – what did he – how did he get in this time? Did he bring a – did he have a passport? He came on a passport under his newly adopted identity. New name? Yes. I'll reserve time for rebuttal unless there are any more questions. Well, I guess I don't understand why you think that the earlier testimony, at least, that he gave can't be used by the immigration judge to determine the credibility of his subsequent 2005, 2006 application and testimony. I mean, they went through the record, different dates of when the abuse had occurred, whether it was 87 or 89 versus 1990. He denied that he even had testified about a 1990 incident in the earlier hearing before the immigration judge in 92 and then changed his mind and said, well, yeah, it did happen in 1990. I remember that now. I just forgot it. And then proceeds to give a different version of the 1990 incident and how long he was held and where it occurred. And why isn't that proper for the immigration judge to look at the earlier statement and say, based on this testimony in the hearings in 2005, 2006, I find they're incredible? Well, clearly that's the most problematic piece of this case. But the finding here is that application number two was frivolous. The explanation that the Respondent gave for the testimony that he had given previously, well, first he tried to claim that he recanted his testimony. And maybe he did recant it to somebody somewhere, but he didn't recant it on the record to Judge Keener. Then he goes on to say that he was under a great deal of pressure. He was worried about his parents. His parents were sick. He was in custody. And the only people he had contact with were an attorney and an attorney's interpreter. And we know that this attorney was later forced to resign from the bar. So, you know, it is conceivable that he was under a great deal of pressure. And that's the only explanation I can offer. All right. Thank you. Thank you. Stewart-Nicholm, on behalf of the Attorney General. The agency's decision in this case should be affirmed, and the petition for review denied, is the agency properly concluded that the Petitioner had made a frivolous asylum application. Now, the application itself, the frivolousness finding, wasn't based simply on comparing the first application and the second application. It was based on false testimony that the Petitioner gave in the current proceedings. I think there are a number of examples of it, but I think the most obvious example is the testimony about this 1990 arrest. The basis of the first asylum application, which was filed by Walter Pineda, but it was based on this 1990 arrest, that he was arrested for participating with his group, the AISSF, All India Student Seat Foundation, I believe. He was arrested in 1990 for his membership and participation in that. That was the basis for the earlier. For the first application, correct. And the second application was that he was arrested in 1987 and 89, based on assisting Sikhs in relocating to the Punjab region. So there was this claim of a 1990 arrest that was the basis of the declaration in his first claim. It was also what he testified to in his first claim. Now, when asked why that didn't, or in terms of trying to explain the inconsistency between those two applications, he came up with three different stories in his current proceedings. First, he claimed that everything he'd said during the first proceeding was true, that all the application, the declaration, all that stuff was true, and that his testimony was true. Then he was shown the application itself. And he says for the first time, oh, wait a minute. No, the declaration was false. I was prepared by this other attorney. The declaration was false. But everything I said in my testimony at the first hearing was true. Well, then he says that I informed the judge that the declaration was false. That's clearly not consistent with the transcript of the first hearing. He never informed the I.J. that the declaration was false. In fact, he testified at the hearing relatively consistent with the declaration. The first hearing and the declaration were relatively consistent. And so his – he first said everything was true, having then said, well, okay, the declaration was true, but my – or the declaration was false, but my testimony was true. Then he's confronted about it again, about specifically this 1990 arrest, the substance of his first application. And suddenly he changes his story again and say, oh, no, wait. No, that was true. The 1990 arrest really did happen. And it's sort of admitting this thing which he previously said was false. And he essentially trapped himself by trying to preserve his credibility and by trying to deny the fact that he had given false testimony in his first hearing. He trapped himself in a lie, and in doing so, he gave false testimony in his current proceedings. The – it's not simply a matter of comparing the two – the two applications. It was his false testimony in the current proceedings that gave rise to the Fertilis Vining. I think that is – And was he ever warned about, you know, the consequences of – Yes, on at least three occasions. In this proceeding? In these proceedings, yes, yes. During the first proceedings, his – this was an affirmative asylum application, and the warning on the application itself was the first time the warning – he would have been warned about it. But he was also warned through counsel at the first hearing, the IJ – this is AR-76 – the IJ said, you know, counsel, you take responsibility for giving your client the Fertilis warnings, yes. And then on the October 12th hearing in 2005, this is at – Is that the current proceeding or still – Again, this is – this is the current proceedings, yes. 2005. In 2005, correct, correct. At the October 12th, 2005 hearing, he was warned specifically by the immigration judge directly on the record – again, this is AR-97 and 98. Of the consequences of filing a frivolous application. And so, I mean, the Petitioner was clearly given notice of the consequences on numerous occasions. So I don't think there's any question that it's a lack of notice. Nor was there any argument, the Petitioner's appeal to the board or the opening brief for this Court as to any procedural errors in terms of the board's or the agency's frivolousness determination. Unless there are further questions, I'll just get on those comments. Thank you. It's fine. Yeah. Just briefly. So I think – I think we're in agreement that there were no frivolous warnings given before the first application was filed because the warnings didn't exist at that time. So the question is – and he was warned about the consequences of filing a frivolous application before the second – before he began testimony on his second. So the question is, if he falsely testified in his second hearing about what he had said during his first hearing, does that mean the application is fraudulent, and my argument is that it does not. Okay. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: O'grady, Goodwin, Paez